Case 2:14-cr-00321-GMN-NJK   Document 137   Filed 02/02/16   Page 1 of 7

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>KEITH WILLIAMS,<br><br>            Defendant. | Case No. 2:14-cr-00321-GMN-NJK<br><br>REPORT & RECOMMENDATION<br><br>(Docket No. 132) |

This matter was referred to the undersigned Magistrate Judge on Defendant Keith Williams' Motion to Suppress Evidence. Docket No. 132. The Court has considered Defendant's motion, and the United States' response and supplement. Docket Nos. 132, 133, 135.

On November 12, 2015, the Court held a hearing on Defendant's motion to appoint new counsel. Docket No. 119. At that hearing, after engaging in *in camera* discussions with Defendant and his counsel, the Court allowed Defendant the limited opportunity to file up to four motions *pro se*. *Id*. The Court ordered that Defendant must file these motions no later than December 15, 2015, and set a briefing schedule for responses and replies. *Id*. Defendant failed to file any motions by December 15, 2015. *See* Docket.

On December 29, 2015, the Court held a hearing prompted by a letter written by Defendant. Docket No. 128. At that hearing, after again engaging in *in camera* discussions with Defendant and his counsel, the Court extended the deadline for Defendant to file up to four motions *pro se* to January 8, 2016, and set a further briefing schedule for responses and replies. *Id*. On January 13, 2016, five days after his deadline, Defendant filed the pending motion to suppress. Docket No. 132. On January 25, 2016, the United States filed its response. Docket No. 133.[1] Despite the late nature

---

[1] On January 27, 2016, the Court issued an order requiring the United States to supplement its response with points and authorities. On January 28, 2016, the United States filed its supplement.

of these filings, the Court considers them on their merits.

**I.     BACKGROUND[2]**

Beginning in June 2014, Las Vegas Metropolitan Police Department ("LVMPD") investigators became aware of a series of armed robberies that they believed were committed by the same suspects. Docket No. 1 at 3. The suspects in each of the robberies bore the same physical characteristics, and wore similar or the same clothing in the different robberies. *Id*. During one of the robberies, prior to July 13, 2014, the getaway vehicle was captured on surveillance video and was identified as a dark-colored, late 1990s model Ford Crown Victoria or Mercury Grand Marquis. *Id*. at 3-4.

On July 13, 2014, a robbery occurred at a Circle K and a Mini-Mart, and investigators determined from the Circle K surveillance footage that the robbers "appeared and operated in a manner consistent with those of the prior robberies." *Id*. at 4. A few minutes after the Mini-Mart robbery, LVMPD patrol officers observed a vehicle that matched the description of the getaway car a short distance from the Mini-Mart. *Id*.; Docket No. 133-2 at 1. Officers followed the vehicle for a time, until backup arrived, and then activated their overhead lights and siren in order to stop the vehicle. *Id*. The vehicle rapidly accelerated and began driving at a high rate of speed while police followed it. *Id*. at 1-2. Eventually, the driver lost control of the vehicle and smashed into a curb, bus bench, and landscaping, causing the vehicle to proceed on only two tires, for approximately 10 feet. *Id*. The driver regained control of the vehicle and continued driving in traffic at approximately 70 miles per hour. *Id*. The driver again lost control of the vehicle, causing it to come to a complete stop, at which time, three suspects ran from the vehicle. *Id*.

Defendant, who had been seated in the backseat of the vehicle, ran south and hopped over an eight-foot wall. Docket No. 133-3 at 8. He was found hiding inside a locked cargo van. *Id*. Defendant was arrested and transported to Headquarters, where he gave a post-*Miranda* statement

---

Docket No. 135.

[2]The Court derives its factual background from the law enforcement report and search warrant affidavit attached to the United States' response, as well as the Complaint filed in the instant case. Docket Nos. 1, 133-1, 133-2.

admitting to his involvement in 16 business robberies. *Id*. The clothing that Defendant and the other two men in the vehicle were wearing at the time of their arrests was consistent with the clothing of the three robbers in the video surveillance of the Circle K robbery that day. Docket No. 1 at 5.

Defendant now asks the Court to suppress his arrest and the stop of the vehicle. Docket No. 132. Defendant alleges that, on July 30, 2014, his charges were dismissed in state court. *Id*. at 2. On July 31, 2014, as he was being released from a state detention facility, he was arrested on federal charges and transported to the custody of the United States Marshal. *Id*. Defendant alleges that no arrest warrant issued, which violated his Fourth Amendment rights. *Id*. Defendant further alleges that the stop of the vehicle in which he was riding was illegal, as it was based on an anonymous tip. *Id*.

In response, the United States submits that Defendant was arrested pursuant to a federal criminal complaint. Docket No. 133 at 1. The United States contends that Defendant's arrest complied with the requirements of Federal Rule of Criminal Procedure 5(b). *Id*. at 1-2.

**II.    ANALYSIS**

    **A.    Warrantless Arrest**

On July 29, 2014, United States Magistrate Judge Peggy A. Leen found that probable cause existed and issued a criminal complaint charging Defendant with Conspiracy to Interfere with Commerce by Robbery, in violation of Title 18, United States Code, Section 1951; Brandishing a Firearm in Furtherance of a Crime of Violence, in violation of Title 18 United States Code, Sections 924(c)(1)(A)(ii) and (iii) and 2; and Interference with Commerce by Robbery, in violation of Title 18, United States Code, Sections 1951 and 2. *See* Docket No. 1. On July 31, 2014, Defendant made his initial appearance in this Court before Judge Leen. Docket No. 11.

Federal Rule of Criminal Procedure 5(b) states that "[i]f a defendant is arrested without a warrant, a complaint meeting Rule 4(a)'s requirement of probable cause must be promptly filed in the district where the offense was allegedly committed." Under the Fourth Amendment, a warrantless arrest requires probable cause. *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). When agents make a warrantless arrest, they must file a complaint "'promptly' in the district where

1  the offense was allegedly committed. Probable cause to arrest exists when officers have knowledge
2  or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that
3  an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482
4  F.3d 1067, 1072 (9th Cir. 2007).

5        A complaint, which is a judicial determination of probable cause, generally requires a factual
6  analysis of "the totality of the circumstances known to the officers at the time of the [arrest]." *Lacey*
7  *v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc) ("*Lacey II*" ). In assessing probable
8  cause, the court must also "take into account reasonable inferences." *United States v. Struckman*,
9  603 F.3d 731, 740 (9th Cir. 2010). Federal Rule of Criminal Procedure 5(b) requires that a
10 complaint be filed either before, or shortly after, a suspect is arrested." *United States v. Bueno-*
11 *Vargas*, 383 F.3d 1104, 1107 (9th Cir. 2004).

12       In this case, Judge Leen made a judicial determination of probable cause on July 29, 2014.
13 Docket No. 1. Defendant alleges that he was arrested on these charges on July 31, 2014. Docket
14 No. 132 at 2. The United States, therefore, complied with the caselaw and the federal rules in
15 arresting Defendant on the complaint.

16       **B.**    **Stop of Vehicle**

17       Defendant next submits that the stop of the vehicle in which he was riding was illegal, and
18 asks the Court to suppress it. Docket No. 132 at 2. Defendant contends that the initial stop was
19 based upon an anonymous tip, and that the vehicle committed no traffic violations; therefore, it was
20 illegally stopped. *Id*. The United States responds that, contrary to Defendant's assertions, law
21 enforcement "knew that suspects in a series of robberies were using a getaway vehicle matching the
22 description of the vehicle" in which Defendant was a passenger. Docket No. 133 at 2. When law
23 enforcement attempted to stop the vehicle, it rapidly accelerated and led law enforcement on a chase,
24 with the driver losing control of the vehicle on two separate occasions. *Id*. When the vehicle finally
25 stopped, Defendant and the other occupants fled on foot. *Id*. The United States therefore submits
26 that the stop was reasonable. *Id*.

27
28

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when an officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). In Fourth Amendment terms, a traffic stop entails a seizure of the driver "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653,(1979); *see also Whren v. United States*, 517 U.S. 806, 809-810 (1996) ("Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]"). Even brief temporary detention of individuals for a limited purpose in a traffic stop constitutes a seizure for purposes of the Fourth Amendment. *See United States v. Martinez-Furerte*, 428, U.S. 543, 556 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975); *United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir. 2000).

Law enforcement officers "may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." *United States v. Grigg*, 498 F.3d 1070, 1074 (9th Cir. 2007). As long as there is an objectively reasonable basis to perform a traffic stop, the stop will be permitted by the Fourth Amendment. *United States v. Morales*, 252 F.3d 1070, 1074 (9th Cir. 2001) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

The Ninth Circuit defines "reasonable suspicion" as "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Rojas-Millan*, 234 F.3d 464, 468-69 (9th Cir. 2000) (quoting *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000)). A police officer "is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also 'be grounded in objective facts and be capable of rational explanation.'" *Lopez-Soto*, 205 F.3d at 1105 (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)). If an officer does not have reasonable suspicion, and the traffic stop therefore violates the Fourth Amendment, any evidence obtained as a result of the stop must be suppressed as fruit of the poisonous tree. *United States v. Thomas*, 211 F.3d 1186, 1192 (9th Cir. 2000) (citing

1  *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963)).

2      The Supreme Court has held that police contact during an investigatory detention must be 3 reasonably related to the circumstances that initially justified the detention. *United States v. Sharpe*, 4 470 U.S. 675, 682 (1985). "The length and scope of detention must be justified by the circumstances 5 authorizing its initiation." *Pierce v. Multnomah County*, 76 F.3d 1032, 1038 (9th Cir. 1996) (citing 6 *Terry v. Ohio*, 392 U.S. 1, 16, 19 (1968)). The Ninth Circuit has held that "An officer must initially 7 restrict the questions he asks during a stop to those that are reasonably related to the justification for 8 the stop." *United States v. Perez*, 37 F.3d 510, 513 (9th Cir. 1994).

9      In this case, law enforcement had been investigating a series of armed robberies, that 10 appeared to have been committed by the same three people, for approximately a month. In a prior 11 robbery, law enforcement obtained video of the getaway car, and thus had a probable description. 12 On this date, two robberies had occurred, and law enforcement had viewed the surveillance video 13 for one of the robberies. The car in which Defendant was a passenger, which matched the 14 description of the getaway car, was observed near the location of the latter robbery of the morning. 15 When police attempted to stop the vehicle, it led police on a high-speed chase, with the driver 16 eventually losing control of the car twice, crashing into objects, and high centering on a median. 17 Once the vehicle finally stopped, Defendant ran on foot away from the vehicle, hopping over a wall, 18 in order to further evade law enforcement. When he was found hiding inside a locked cargo van, 19 Defendant matched the description of one of the robbers, and his clothing was consistent with the 20 clothing of one of the three robbers in the video surveillance of the Circle K robbery that day.

21     The Court therefore finds, based on all the facts as stated above, that reasonable suspicion 22 clearly existed to stop the vehicle in which Defendant was riding. Further, based upon the 23 circumstances as they developed during law enforcement's attempt to stop the vehicle, the detention 24 of Defendant was reasonable and based upon probable cause. The Court therefore finds that the stop 25 did not violate any of Defendant's rights.

26 . . . .

27 . . . .

28 . . . .

### III. CONCLUSION

Based on the foregoing and good cause appearing therefore,

IT IS RECOMMENDED that Defendant's Motion to Suppress (Docket No. 132) be **DENIED**.

### NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 2nd day of February, 2016.

_____
NANCY J. KOPPE
United States Magistrate Judge