# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br> )<br>         Plaintiff, )<br>   vs. )<br> )<br>KEITH WILLIAMS, )<br> )<br>         Defendant. )<br>_____ ) | Case No.: 2:14-cr-00321-GMN-NJK-3<br><br>**ORDER** |

Pending before the Court is Defendant Keith Williams's ("Defendant's") Motion for Compassionate Release, (ECF No. 391). The Government filed a Response, (ECF No. 398), and Defendant filed a Reply, (ECF No. 406).

Also pending before the Court are the unopposed Motions to Seal, (ECF Nos. 392, 399, 407), which request that Defendant's medical records be sealed.

For the reasons discussed below, the Court **DENIES** the Motion for Compassionate Release, **GRANTS** the Motions to Seal, and **RECOMMENDS** the Bureau of Prisons designate Defendant to home confinement.

## I.      BACKGROUND

On April 19, 2017, Defendant pleaded guilty to one count of conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951, three counts of interference with commerce by robbery in violation of 18 U.S.C. §§ 1951–52, and one count of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(i) and (ii). (*See* Mins. Proceedings, Change of Plea, ECF No. 270); (Superseding Indictment, ECF No. 167). On September 6, 2017, the Court sentenced Defendant to sixty-three months custody for each of the robbery counts to be served concurrently, and eighty-fourth months custody as to the brandishing a firearm count to run consecutively to all other

counts. (*See* Mins. Proceedings, Sentencing, ECF No. 302); (J., ECF No. 303).  Defendant is presently in custody at the Lompoc United States Penitentiary ("USP Lompoc")[1], and he now petitions this Court for compassionate release. (*See* Mot. Compassionate Release ("MCR"), ECF No. 391).

## II.   **LEGAL STANDARD**

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), authorizes the sentencing court to modify a defendant's sentence in limited circumstances. 18 U.S.C. § 3582(c)(1)(A). The sentencing court may order compassionate release, "if after considering the factors set forth in 18 U.S.C. § 3553(a)," the defendant has demonstrated: (1) he has exhausted his administrative remedies; (2) "extraordinary and compelling reasons" warrant a reduction in his sentence, and (3) he is not "a danger to the safety of any other person or the community." 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13.  Under United States Sentencing Guideline § 1B1.13, "extraordinary and compelling reasons" include, among other things, terminal illnesses and medical conditions "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13.  The court may also consider "other reasons" including a "reason other than, or in combination with" a reason specifically provided in the Sentencing Guidelines. *Id.*  The decision to grant compassionate release is in the sentencing court's discretion. See *United States v. Wade*, 2:99-cr-00257-CAS-3, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020).

//

---

[1] The Government and Defendant's pleadings are inconsistent regarding whether Defendant is held at FCI Lompoc, a low security institution, or USP Lompoc, a medium security institution; however, the Bureau of Prisons' website indicates that Defendant is held at USP Lompoc. *See* Bureau of Prisons, Find an Inmate, Find by Name, https://www.bop.gov/inmateloc/ (last accessed Jan. 13, 2021).

## III.   <u>DISCUSSION</u>

The Court's below discussion considers whether Defendant has met his burden to show that he meets the requirements for compassionate release.

### A.   **Exhaustion of Administrative Remedies**

Defendant argues that he has exhausted his administrative remedies by making a request for compassionate release to the warden of his facility, which was not responded to within thirty days. (MCR 11:15–17, ECF No. 391).  Defendant does not provide a copy of the request, but he does attest that he has made the request in a declaration submitted under penalty of perjury. (*See* Williams Decl. ¶ 3, ECF No. 391-1) (explaining that he made the request on August 21, 2020, over two months before bringing the instant Motion).  The Government argues that Defendant has not satisfied his burden because Defendant did not submit a copy of his request. (Gov't Resp. ("Resp.") 5:12–6:3, ECF No. 398).

The Government is incorrect.  While copies of requests for compassionate release are often submitted to show that the movant has exhausted his administrative remedies, there is no requirement for such evidence.  A sworn declaration is sufficient.  Accordingly, the Court finds that Defendant has exhausted his administrative remedies and this Court has jurisdiction over Defendant' Motion for Compassionate Release.

### B.   **Extraordinary and Compelling Reasons**

Defendant argues that the threat of contracting COVID-19 in USP Lompoc, in combination with Defendant's race and underlying health conditions—heart disease, obesity, asthma, hypertension, borderline diabetes, and hyperthyroidism—put him at increased risk of severe COVID-related complications, which provide extraordinary and compelling reasons for his release. (*See* MCR 7:14–9:8); (*see also* Defs.' Medical Records, Ex. 1 to Mot. Seal, ECF No. 392-1).  The Government argues that Defendant is not at significant risk of contracting COVID-19 at USP Lompoc, and it further disputes whether Defendant's underlying conditions

place him at heightened risk for COVID-related complications. (Resp. 9:6–10:12).  The Court first assesses Defendant's heightened risk of contracting COVID-19 at USP Lompoc before considering whether his risk of severe COVID-19 complications provide extraordinary and compelling reasons for his release.

The Court finds that Defendant has met his burden to show he faces a heightened risk of contracting COVID-19 while in custody at USP Lompoc.  The Government cites the COVID-19 case numbers reported by the Bureau of Prisons ("BOP"), which purportedly showed that USP Lompoc was not experiencing an outbreak of the virus when the Government filed its Response because the facility had only one inmate case and one staff case. (Resp. 10:1–12) (citing COVID-19. *See* COVID-19 Reported Cases, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 7, 2020)).  However, the current COVID case numbers at the facility have grown—to 48 out of 851 inmates and 9 staff—indicating that it may be experiencing a growing outbreak. *See* COVID-19 Reported Cases, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 13, 2021).

Not only is USP Lompoc's case total substantial relative to its inmate population, but an Inspector General Report indicates that the BOP's Lompoc facilities have been among the least effective correctional institutions at containing COVID-19. (MCR 3:7–16) (citing Department of Justice, Office of the Inspector General, Pandemic Response Report 20-086, July 2020, Remote Inspection of Federal Correctional Complex Lompoc, at ii (Summary of Inspection Results), located at https://oig.justice.gov/reports/remote-inspection-federal-correctional-complex-lompoc)).  The report indicates that the Lompoc facilities struggle with inadequate medical staff, COVID screening and testing, delays in implementing precautionary restrictions and isolation procedures for infected inmates, scant personal protective equipment, and too little space to properly quarantine exposed inmates. (*Id.*).  Defendant further attests that inmates at USP Lompoc still do not have "gloves, masks, sanitizers, or cleaning supplies;" they are not

tested unless they have a fever; and there is no social distancing because it is not possible in the facility. (Williams Decl. ¶ 5).  In light of the foregoing, the Court finds that Defendant has demonstrated that remaining at USP Lompoc will put him at heightened risk for contracting COVID-19, especially when contrasted with the risk he would face in his proposed home confinement at his mother's residence. (*See id.* ¶ 7) (discussing his release plan).

Additionally, Defendant is at heightened risk of severe complications from COVID-19. The Government argues that Defendant has not met his burden because his medical records show: (1) his hypertension has resolved; (2) his asthma is in remission and only moderate to severe asthma increases the risk of COVID complications; (3) he is not significantly obese; and (4) pre-diabetes and hyperthyroidism do not increase the risk of COVID-complications. (Resp. 9:11–18).  The Government concedes that Defendant's race is a factor that could increase the severity of COVID-related complications. (*Id.*).  In his Reply, Defendant argues: (1) the Government concedes that Defendant has high blood pressure, which puts Defendant at heightened risk for COVID-19 complications; (2) the Government concedes that Defendant's race increases his risk of complications; and (3) Defendant continues to suffer from hypertension, asthma, and obesity, which are all relevant risk factors. (Def.'s Reply 2:25–3:5, 4:25–5:2).

Defendant has a panoply of conditions that medical evidence indicates may increase the risk of COVID-19 related complications.  Defendant's most recent medical records show that he still suffers from hypertension and asthma, and despite the conditions being relatively controlled, the Government provides no indicia that treated underlying conditions are any less susceptible to creating COVID-related complications than those that are untreated.[2] (*See* Med Records, Ex. to Second Mot. Seal, ECFF No. 407).  Additionally, Defendant's most recently

---

[2] Put differently, it's unclear whether certain underlying conditions are likely to result in COVID-19 complications because of how the combination of COVID-19 and the conditions affect the body, or whether the complications result from the virus exacerbating symptoms associated with underlying conditions.

reported body mass index puts him in the range of obesity that increases the risk of complications from COVID-19. (Reply at 7:7–14); *See* CDC, "Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions,"
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, (last visited Jan. 13, 2021).  Defendant's weight, asthma, and hypertension, in combination with the Government's concession that Defendant's race increases his risk for COVID-19 complications, provide extraordinary and compelling reasons for his release.

    **C.**    **Section 3553(a) Factors**

        A Court may only grant compassionate release if the applicable 18 U.S.C. § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A).  These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a).

        The Government argues that the factors caution against release because Defendant has only served roughly six years of a twelve-year sentence. (Resp. 11:6–11).  The Court agrees that Defendant has not been in custody for a sufficient period of his sentence.  Even if, as Defendant argues, he is eligible for release to a halfway house after three more years, the Court finds the remaining time in custody necessary as a deterrent given the characteristics of Defendant. (MCR 16:24–17:10).  Defendant was convicted of bank robbery when he was sixteen, and he committed the robberies for which he is presently incarcerated only two years into his parole for the preceding offense. (*See* PSR ¶ 66); (Resp. 10:20–11:5).  Accordingly, the Court finds that compassionate release is not warranted and need not reach the question of

whether Defendant would be a danger to the public if his sentence were reduced to time served with a special term of supervised release.

However, because of Defendant's susceptibility to COVID-19 with severe complications, the Court recommends to the Bureau of Prisons that Defendant be placed in home confinement for the remainder of his sentence. *See* 18 U.S.C § 3621(b) (giving the Bureau of Prisons the discretion to designate the facility in which a prisoner serves his sentence after considering the sentencing court's recommendation). *See, e.g.*, *United States v. Shabudin*, 445 F. Supp. 3d 212 (N.D. Cal. 2020) (recommending home confinement in light of the COVID-19 pandemic).  If the Bureau of Prisons is able to ensure compliance, then home confinement would satisfy the penological interests of Defendant serving the remainder of his sentence.

## IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion for Compassionate Release, (ECF No. 391), is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **RECOMMENDS** that the Bureau of Prisons designate Defendant to home confinement.

**IT IS FURTHER ORDERED** that the Motions to Seal, (ECF Nos. 392, 399, 407), are **GRANTED**.

Dated this  14  day of January, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT