# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KEITH WILLIAMS, )<br>)<br>Defendant. )<br>) | Case No.: 2:14-cr-00321-GMN-NJK-3<br><br>**ORDER** |

Pending before the Court is Defendant Keith Williams's ("Defendant's") Motion for Compassionate Release, (ECF No. 412). The Government filed a Response, (ECF No. 415), to which Defendant filed a Reply, (ECF No. 416).

Also pending before the Court is Defendant's unopposed Motion to Seal, (ECF No. 413), which requests that Defendant's medical records be sealed.

For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Compassionate Release and Motion to Seal.[1]

I. **BACKGROUND**

This is Defendant's second Motion for Compassionate Release ("MCR"). (*See* Order, ECF No. 408). The Court denied Defendant's first MCR on January 14, 2021.[2] (*Id.*). In the Order denying Defendant's first MCR, the Court found that Defendant "met his burden to show he faces a heightened risk of contracting COVID-19 while in custody at USP Lompoc." (*Id.* 4:5–6). But the Court further found that the 18 U.S.C. § 3553(a) factors cautioned against

---

[1] The Exhibits Defendant seeks to seal contain his confidential medical records. Accordingly, the Court finds good cause to seal the records. *See, e.g., Johnson v. Tambe*, No. 19-141-TSZ-MLP, 2019 WL 4014256, at *2 (W.D. Wash. Aug. 26, 2019) (finding "Plaintiff's privacy interest in his own medical records to be a sufficiently compelling reason to seal the medical records themselves").

[2] The Court incorporates the background information about Defendant's underlying crimes from its previous Order, (ECF No. 408).

compassionate release. Specifically, the Court found that "Defendant [had] not been in custody for a sufficient period of his sentence," and "the remaining time in custody [was] necessary as a deterrent given the characteristics of Defendant." (*Id.* 6:18–22). Although the Court denied Defendant's first MCR, the Court recommended that the Bureau of Prisons designate Defendant to home confinement for the remainder of his sentence. (*Id.* 7:15–16). The Bureau of Prisons has not adopted the Court's recommendation. (MCR 1:27–2:1).

By the instant Motion, Defendant again petitions this Court for compassionate release. Defendant identified several changed circumstances, including the Bureau of Prison's rejection of this Court's recommendation, Defendant's COVID-19 illness, Defendant's increased length of time served, and USP Lompoc's worsening conditions concerning the COVID-19 pandemic. (*Id.* 1:26–2:8). Defendant requests that the Court reduce his one hundred forty-seven (147) month sentence to time served with a condition that he serve the remainder of his prison sentence under strict supervision by the Probation Office in home confinement. (MCR 1:22–25). That is, Defendant requests release in a manner identical to the Court's previous recommendation.

## II. LEGAL STANDARD

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), authorizes the sentencing court to modify a defendant's sentence in limited circumstances. 18 U.S.C. § 3582(c)(1)(A). The sentencing court may order compassionate release, "if after considering the factors set forth in 18 U.S.C. § 3553(a)," the defendant has demonstrated that: (1) he has exhausted his administrative remedies; (2) "extraordinary and compelling reasons" warrant a reduction in his sentence; and (3) he is not "a danger to the safety of any other person or the community." 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. Under United States Sentencing Guideline § 1B1.13, "extraordinary and compelling reasons" include, among other things, terminal illnesses and

medical conditions "that substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13.  The court may also consider "other reasons" including a "reason other than, or in combination with" a reason specifically provided in the Sentencing Guidelines. *Id.*  The decision to grant compassionate release is in the sentencing court's discretion. *See United States v. Wade*, 2:99-cr-00257-CAS-3, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020).

### III. DISCUSSION

As an initial matter, the parties do not dispute that Defendant properly exhausted his administrative remedies. (*See generally* Resp., ECF No. 415).  Additionally, the Court has previously found that Defendant has presented extraordinary and compelling reasons for release—reasons, it appears, that have only become more extraordinary and compelling.[3] (Order 4:5–6, ECF No. 408).  Therefore, the Court's analysis is limited to a discussion of whether Defendant has demonstrated that his release would not present a danger to the public, as well as whether release is warranted under the 18 U.S.C. § 3553(a) factors.

### A. Section 3553(A) Factors

The factors found in 18 U.S.C. § 3553(a) now weigh in favor of Defendant's release. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release).  These factors include: (1) the nature and circumstances of the offense

---

[3] Defendant has contracted COVID-19 at least twice during his time in prison, and at the time Defendant submitted the present MCR, he was extremely ill with the virus. (Reply 3:16–18, ECF No. 416). The parties dispute whether Defendant has presented extraordinary and compelling reasons for release. (*See* Resp. 5:12–10:17) (arguing that Defendant cannot show extraordinary and compelling reasons for release related to COVID-19 largely because Defendant refused to be vaccinated). Although the Court notes the change in availability of COVID-19 vaccines since its Order rejecting Defendant's first MCR, the Court will not re-visit the issue of extraordinary and compelling reasons.  Moreover, refusal to get vaccinated does not foreclose the possibility of compassionate release. *See United States v. Williams*, No. 13-CR-00764-WHO-1, 2021 WL 2936728, at *3 (N.D. Cal. July 13, 2021).

and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a).

The Court denied Defendant's first MCR because, at the time, Defendant had only served roughly half of his twelve-year sentence. (Order 6:17–19). Specifically, the Court noted that "[e]ven if, as Defendant argues, he [would be] eligible for release to a halfway house after three more years, the Court finds the remaining time in custody necessary as a deterrent given the characteristics of Defendant." (*Id.* 6:19–22).

Two years have passed since the entry of this Order. That is two more years served, and two years closer to eligibility for release to a halfway house. Defendant argues that this additional time served, as well as the other § 3553(a) factors, now weigh in favor of compassionate release. (MCR 11:12–14:12). The Government argues that the § 3553(a) factors militate against the relief sought because Defendant "was already a felon convicted of multiple violent crimes (including burglary, kidnapping, and robbery) when he embarked on the long series of armed robberies which resulted in his current imprisonment." (Resp. 11:13–15).

It is true that Defendant is serving a term of imprisonment for crimes relating to an armed robbery. (*See generally* J., ECF No. 37). The Court recognizes that Defendant's crimes were crimes of violence. (*Id.*) (identifying nature of offenses as "Interference with Commerce by Robbery and Carrying and Use of a Firearm During and in Relation to a *Crime of Violence*) (emphasis added). But the violent nature of an armed robbery does not foreclose the possibility of compassionate release. *See, e.g.*, *United States v. Jones*, 482 F. Supp. 3d 969, 972, 985 (N.D. Cal. 2020) (granting compassionate release to a defendant who plead guilty to five counts of

armed robbery and two counts of using a firearm in furtherance of a crime of violence); *United States v. Mack*, No. 2:98-CR-162, 2021 WL 1099595, at *4–5 (S.D. Ohio Mar. 23, 2021) (granting motion for compassionate release for a defendant convicted of three counts of armed bank robbery, three firearm counts, and six counts of unarmed bank robbery). And Defendant has now served most of his sentence for his crimes and will soon be eligible for the halfway house. Finally, the Court notes that Defendant seeks to be released to home confinement. That is, by granting Defendant's MCR, the Court is not shortening the length of Defendant's sentence. The Court finds that the § 3553(a) factors weigh in favor of release.

### B. Danger to the Public

The Court finds that the relief Defendant seeks negates any potential danger he may present to the public. The Court is persuaded by Defendant's argument that because Defendant would "spend the rest of his sentence in home confinement under strict supervision, and because of his multiple physical ailments, the sentence here requested would be more than adequate to protect the public from him . . . ." (MCR 13:8–11). Moreover, as Defendant notes, he is soon eligible for a halfway house: "There is no reason to believe that he would be any more dangerous in home confinement under strict supervision than in a halfway house or home detention in the relatively near future." (*Id.* 13:13–17).

Indeed, although the Court did not reach the question of whether Defendant would be a danger to the public, the Court essentially determined that home confinement is appropriate and would not endanger the public when it recommended that the Bureau of Prisons place Defendant in home confinement. (*See generally* Order). The Government offers no compelling arguments to the contrary. (*See* Resp. 11:13–19) (arguing, without consideration of specific conditions of release at issue, that any reduction of Defendant's sentence would fail to protect the public). Accordingly, the Court finds that the requested sentence reduction would not endanger the public. Because extraordinary and compelling reasons warrant compassionate

release, the Court will exercise its discretion to release Defendant to home confinement to serve the remainder of his prison sentence.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Compassionate Release, (ECF No. 412), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Bureau of Prisons designate Defendant to home confinement for the remainder of his sentence.

**IT IS FURTHER ORDERED** that this Order is **STAYED for up to fourteen days**, for the verification of Defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure Defendant's safe release.  Defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for Defendant to travel.  There shall be no delay in ensuring travel arrangements.  If more than fourteen days are needed to make appropriate travel arrangements and ensure Defendant's safe release, the parties shall immediately notify the Court and show cause as to why the stay should be extended.

**IT IS FURTHER ORDERED** that the Motion to Seal, (ECF No. 413), is **GRANTED**.

Dated this __23__ day of January, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT